[No. 1412-1. Division One—Panel 2. April 16, 1973.]

SKI ACRES DEVELOPMENT COMPANY, *Appellant,* v. DOUGLAS G. GORMAN, INC., *et al., Respondents.*

*Wolf, Hackett, Beecher & Hart* and *Martin L. Wolf,* for appellant.

*Reed, McClure, Moceri & Thonn, P.S., William R. Hickman, Hugh A. McClure, Ferguson & Burdell,* and *W. Wesselhoeft,* for respondents.

WILLIAMS, J.—Ski Acres Development Company, as owner, brought this action against Douglas G. Gorman, Inc., and United Masonry, Inc., contractors, and Eugene G. Mushkin and Harvey Dodd & Associates, a design team, to recover for damages to its building which occurred when an overburden of snow crushed a substantial portion of it. The cause was tried before the court and a jury. When all of the evidence was in, but before the jury was instructed, the design team was dismissed. Thereafter, the jury returned a verdict in favor of Ski Acres and against the contractors; Gorman in the amount of $100,686.72 and United Masonry in the amount of $35,685.01. The contractors moved for a reduction of the verdict by the amount paid to Ski Acres by the design team to secure its dismissal, and by the amount still owing by Ski Acres on the building contract. The motion was granted and judgment entered accordingly. Ski Acres appeals, assigning as error the two reductions and the refusal of the trial court to allow interest.

The facts which must be related for a review of the questions raised are these: Ski Acres employed Mushkin to design a large condominium to be built in an alpine recreation area of Kittitas County. Mushkin brought in Harvey Dodd & Associates, structural engineers, to assist in preparing the plans and to aid him in making inspections during construction. Gorman was awarded the construction contract by Ski Acres and subcontracted the chimney work to United Masonry. When the building was almost completed, and at a time when considerable snow had accumulated on the roof, some of the chimneys and gables fell off, resulting

in substantial damage to the structure. In its complaint, Ski Acres placed responsibility for the disaster as follows:

> By reason of the negligence of each of said defendants and by reason of the further failure of the defendant, Douglas G. Gorman, Inc. to comply with the plans and specifications; and by reason of the further failure of the defendants, Mushkin and Harvey Dodd & Associates, to properly design and/or inspect during the course of construction, the said building was partially destroyed in March of 1969 when chimneys and gables tore away from the main structure, and other damage occurred to the structure. As a result, plaintiff has been damaged in the sum of $245,000.00.

The prayer was:

> WHEREFORE, plaintiff prays for judgment against the defendants and each of them in the sum of $245,000.00 together with plaintiff's costs and disbursements incurred herein.

The jury returned a verdict in favor of Ski Acres and against Gorman for $100,686.72 and United Masonry for $35,685.01. Acting upon a post-trial motion of the contractors, the court reduced the verdict by $76,500, which was the amount that the design team had paid Ski Acres to be dismissed from the case, and it set off $37,164.73 which was the unpaid balance on the contract.[1]

The first question is whether the trial court erred in reducing the verdict by the amount paid to Ski Acres by the design team. Ski Acres argues that, in view of the proven cost of repair in the amount of $153,206.66 and its indirect cost of approximately $98,000, the jury, with a verdict totaling $136,371.73, must have deducted the losses attributable to the design team before arriving at the verdict. In this connection, Ski Acres contends that the losses should be segregated and that the contractors had the burden of making the separation.

The applicable rule, which was adopted by this

---

[1] The court then increased the verdict by $6,681.50 for damages found to be directly attributable to the negligence of the design team, only. Appeal has not been taken from this action of the court and it is not important to our decision.

court in *Christianson v. Plumb*, 7 Wn. App. 309, 311, 499 P.2d 72 (1972), is:

> (3) Payments made by one tortfeasor on account of a harm for which he and another are each liable, diminish the amount of the claim against the other whether or not it was so agreed at the time of payment and whether the payment was made before or after judgment; the extent of the diminution is the amount of the payment made, or a greater amount if so agreed between the payor and the injured person.

Restatement of Torts § 885(3) (1939).

In order for Ski Acres to prevail on this point, it must appear that the harm caused could be and was ascribed to the several tort-feasors, individually, so that the jury could apportion the responsibility of each. The loss consisted of the collapse of a substantial portion of a large building. The fault of both the design team and the contractors was inextricably woven into the evidence. No effort was made by any party to assess the particular responsibility for the damages between the design team and the contractors.

As might be expected, the trial strategy of Ski Acres was to place the causes of the loss upon both the contractor and the design team, and they, in turn, blamed each other. This resulted in a trial record of 1,667 pages containing substantial evidence that each party was responsible for almost all of the damages. As noted, there was a segregation between Gorman and United Masonry, but this was a separate issue between the contractor and subcontractor and is not involved in this appeal.

The instructions given by the court which directly bear upon the question of segregation are as follows:

> The fact that the defendants, Eugene G. Mushkin and Harvey R. Dodd & Associates, Inc. have been dismissed as defendants by the plaintiff, should have no bearing on your deliberations in this case. In your deliberations, you shall determine the issues between the plaintiff and the defendants disregarding entirely the fact that there may have been originally more defendants in the case.

Instruction No. 2

There may be more than one proximate cause of a damage; that is to say, there may be lack of ordinary care on the part of more than one person. Where the concurring negligence of two or more persons results in damage to a third person, the third person may recover from either or all of them, but only one amount, without regard to a weighing of negligence or an attempted determination of who is the most negligent.

If you find from the evidence that more than one person was guilty of negligence in any of the particulars charged, and that the negligence of each was one of the proximate causes of the damages, then your verdict must be in favor of the plaintiff and against each defendant thus found to be negligent, whether or not other persons were also negligent.

Instruction No. 8

You are instructed that a defendant is not to be found negligent by reason of faulty design if he performed in compliance with plans and specifications furnished to him by the owner, nor is United Masonry to be found negligent by reason of faulty design if they performed in compliance with plans and specifications furnished to them pursuant to their agreement with Gorman unless they negligently failed to discover a variation between those plans and the plans specified in the contract between the owner and Gorman, or, if they discovered such a variation, unless they were negligent with respect thereto.

Instruction No. 10

In his argument to the jury, counsel for Ski Acres acknowledged that there was some indication of design deficiency, but put the principal cause for all of the loss squarely upon the negligence of the contractors. For example,

I don't think that either of these corporations are going to say they are not liable because the supervisor didn't catch them doing poor work. That may be, I don't know. But of all the criticism that we've had about the design of the building, and all the testimony about this lack of inspection, if you'll recall what happened, almost all of the damage that was caused to the building resulted from poor workmanship.

There was very little damage caused from what you might call an insufficiency of design, the building being poorly designed.

And again,

You hire somebody that you think is competent, and if they don't do a job, well this is part of the result, and the Gorman Company can't hide behind their claim that Mr. Mushkin was a bad architect, because they're in the same boat. And the Court has told you in this instruction [Instruction No. 8] that they are equally at fault.

■ It is apparent that, after the design team was dismissed at the instance of Ski Acres, it, Ski Acres, tried to get all of the damages from the contractors. Ski Acres offered instruction No. 2 set out above, which was given. There is no way to determine from the record how much of the proof the jury accepted or rejected or whether or not it tried to establish a line of separation between the responsibility of the design team and that of the contractors. No assignment of error has been directed to the instructions and those given are the law of the case. In them, there is no provision for an allocation of individual responsibility between the contractors and the dismissed design team for the damages caused. We therefore hold that in view of the content of the pleadings, evidence, instructions, and argument that the trial court was correct in considering the action as being one taken against tort-feasors who were liable for the harm and in off-setting the contribution of one against the amount of the verdict returned against the others.

Ski Acres, relying principally upon *Hufford v. Cicovich,* 47 Wn.2d 905, 290 P.2d 709 (1955) and *Scott v. Rainbow Ambulance Serv., Inc.,* 75 Wn.2d 494, 452 P.2d 220 (1969), contends that it was the duty of the contractors to make the segregation. Those cases do not so hold. There is a rule that if one tort-feasor seeks to limit his liability on the ground that the harm is capable of apportionment between him and the other tort-feasors, the burden of proving the

apportionment is upon him. *Fugere v. Pierce,* 5 Wn. App. 592, 490 P.2d 132 (1971). The reason for the rule

> is the injustice of allowing a proved wrongdoer who has in fact caused harm to the plaintiff to escape liability merely because the harm which he has inflicted has combined with similar harm inflicted by other wrongdoers, and the nature of the harm itself has made it necessary that evidence be produced before it can be apportioned. In such a case the defendant may justly be required to assume the burden of producing that evidence, or if he is not able to do so, of bearing the full responsibility. As between the proved tortfeasor who has clearly caused some harm, and the entirely innocent plaintiff, any hardship due to lack of evidence as to the extent of the harm caused should fall upon the former.

Restatement (Second) of Torts § 433B, comment *d* at 444 (1965). That is not the situation before us.

 Ski Acres' second contention, based upon *Prier v. Refrigeration Eng'r Co.,* 74 Wn.2d 25, 442 P.2d 621 (1968) is that interest should have been allowed from the time the cost of repair became fixed. In this case there was a question of the reasonableness of the cost of repairs and until that was resolved by the jury, the claim was unliquidated. *Wing Ott Lew v. Goodfellow Chrysler-Plymouth, Inc.,* 6 Wn. App. 226, 492 P.2d 258 (1971), *Dravo Corp. v. L. W. Moses Co.,* 6 Wn. App. 74, 492 P.2d 1058 (1971), *Hellbaum v. Burwell & Morford,* 1 Wn. App. 694, 463 P.2d 225 (1969). In *Prier v. Refrigeration Eng'r Co.,* no issue was raised as to the amount of the costs. The trial court was correct in not allowing interest until judgment.

 Third, Ski Acres contends that the balance owing on the contract should not have been offset against the jury verdict because there was a failure of substantial performance of the contract. We disagree. The case was presented and decided upon the basis of bringing the building to the original guarantee. Although the cost of repair was great, neither party urged application of the "unreasonable economic waste" rule of damages applied in *Odgers v. Held,* 58 Wn.2d 247, 362 P.2d 261 (1961). *Prier v. Refrigeration*

782

*Eng'r Co., supra.* Ski Acres may not have the building as originally contemplated without paying the original price. *Baldwin v. Alberti,* 58 Wn.2d 243, 362 P.2d 258 (1961); *Bernbaum v. Hodges,* 43 Wn.2d 503, 261 P.2d 968 (1953).

The judgment is affirmed.

HOROWITZ and JAMES, JJ., concur.

Petition for rehearing denied July 23, 1973.