9 P.3d 886 (2000)
SCOCCOLO CONSTRUCTION, INC., a Washington corporation, Appellant,
v.
CITY OF RENTON, a municipal corporation, Respondent.
No. 46284-9-I.
Court of Appeals of Washington, Division 1.
September 18, 2000.
Jeffrey Gene Poole, Poole & Assoc. PC, Seattle, for Appellant.
Roger Allen Myklebust, John Peter Mele, Ryan Swanson & Cleveland, Seattle, for Respondent.
BAKER, J.
Scoccolo Construction, Inc. (Scoccolo) appeals an adverse summary judgment order in its suit against the City of Renton (Renton) to recover damages due to delays in the completion of a public works contract. A clause in the construction contract provided that Scoccolo, as the contractor, would bear the risk of any delays caused by the actions of any utility company. Scoccolo's claim is based on delays incurred in the relocation of utilities necessary for completion of its work. Scoccolo contends that summary judgment based upon the contract clause was inappropriate because Renton is liable for damages caused by its own actions that contributed to delays related to the relocation of utilities. Scoccolo further contends that RCW 4.24.360 renders the clause unenforceable because it "purports to waive, release, or extinguish the rights of a contractor, subcontractor, or supplier to damages or an equitable adjustment arising out of unreasonable delay in performance which delay is caused by the acts or omissions of the contractee or persons acting for the contractee." On cross appeal, Renton *887 contends that the trial court abused its discretion in awarding it only $10,000 in attorney fees under the contract when it requested attorney fees and costs totaling $216,414.81. We reverse the summary judgment order because the contractual clause does not insulate Renton from liability for its own actions, and consequently vacate the attorney fees award.

I
Scoccolo Construction, Inc. was awarded a contract with the City of Renton to widen Park Avenue, a main city street. The contract provided that the relocation of utilities would be effected by the relevant utility companies, not Scoccolo, although Scoccolo was required to coordinate relocation efforts with the utility companies. The contract further provided that:
No additional compensation will be made to [Scoccolo] for reason of delay caused by actions of any utility company and the Contractor shall consider such costs to be incidental to the other items of the contract.
A franchise agreement between Renton and Puget Sound Power & Light Company (Puget) gave Renton the authority to compel Puget to relocate utilities at Puget's cost and expense. Because the project included replacement of the existing overhead power distribution system with an underground power distribution system, Renton contracted with Puget to perform the relocation in exchange for Renton's payment of the undergrounding cost. That contract did not supercede the franchise agreement. Scoccolo claims that Puget did not complete its obligations under the contract with Renton in a timely manner, which delayed Scoccolo's work on Park Avenue.
Scoccolo filed suit against Renton to recover damages due to delays in the contract, and Renton moved for partial summary judgment to "dismiss all of plaintiff's claims based upon delays caused by utilities" in light of the contractual language which provided that Scoccolo would not receive additional compensation due to delays caused by the actions of any utility company. Renton's motion raised only two arguments: (1) that the contract specifically places the burden and risk of utility caused delays on Scoccolo; and (2) that courts regularly enforce contract clauses such as the one at issue here. At oral argument the parties agreed that the relief Renton sought, as well as the trial court's understanding of that request, encompasses all claims where the actions of a utility company contributed to the delay in any manner.
Scoccolo argued, inter alia, that summary judgment was inappropriate because: (1) Renton knew that Puget was delaying Scoccolo's work, but did not exercise its right to direct Puget to complete the work or to have others complete the work if Puget failed to perform; (2) Renton breached its implied duty to cooperate with Scoccolo and facilitate the completion of the project; and (3) the contractual language precluding additional compensation due to delays caused by the actions of utility companies is invalid under RCW 4.24.360, which states:
Any clause in a construction contract, as defined in RCW 4.24.370,[1] which purports to waive, release, or extinguish the rights of a contractor, subcontractor, or supplier to damages or an equitable adjustment arising out of unreasonable delay in performance which delay is caused by the acts or omissions of the contractee or persons acting for the contractee is against public policy and is void and unenforceable.
Renton's reply memorandum did not address Scoccolo's first or second arguments but did address interpretation of RCW 4.24.360, contending that the statutory language "persons acting for the contractee" implicated only a contractee's agents, and that there was no proof of an agency relationship between Renton and the utility companies. The trial court granted Renton's motion, ordering that "plaintiff's delay claims *888 based on delays caused by utilities are dismissed with prejudice." The parties then agreed to dismiss all remaining claims in order to obtain appellate review of the partial summary judgment order, and Renton was awarded attorney fees in the amount of $10,000. Scoccolo appeals the trial court's summary judgment order, while Renton crossappeals the trial court's award of attorney fees in light of the City's request for attorney fees and costs totaling $216,414.81.

II
Contracting parties may ordinarily allocate risks as they see fit.[2] The default rule in Washington with respect to the clause at issue here is expressed in the companion cases of Nelse Mortensen & Co., Inc. v. Group Health Cooperative of Puget Sound,[3] and Christiansen Brothers, Inc. v. State,[4] which were unanimously decided on the same day by our State Supreme Court.
In Mortensen, contractors brought suit against a hospital owner for damages caused by delays in the remodeling of and adding to the hospital, where the delays were caused by the hospital's owner and architect.[5] The contract provided that no damages could be recovered for delay caused by the owner.[6] The court in Mortensen held that where delays in the completion of a construction contract were within the contemplation of the parties, then no recovery for those delays is allowed if the contract forecloses such a remedy.[7] The court cited with approval this court's holding that:
if owner-caused delay in construction was of a nature contemplated by the parties and specific provisions of their contract provide a remedy, or the contract otherwise supplies a means of compensation for such delay, then the delay cannot be deemed unreasonable to the extent the contract terms should be abandoned in favor of quantum meruit recovery.[[8]]
In Christiansen, the owner of a property failed to diligently coordinate work among contractors but had included a clause in the parties' agreement that precluded damages for delay caused by the owner.[9] The court clarified that:
Active owner interference may in some circumstances be of such a nature as to be outside the contemplation of the parties and thus to transcend a no-damage-fordelay clause.[[10]]
The court noted there was no evidence of owner malfeasance, held that the clause shielded the owner from liability for its neglect in coordinating, and affirmed the trial court's finding that the parties contemplated the delays which occurred.[11]
In response to these two cases, the Legislature enacted RCW 4.24.360, set forth above, which nullified such "no damages for delay" clauses.
Scoccolo argued below that Renton should have exercised its contractual right to direct Puget to complete the work or to have others complete the work if Puget failed to perform, and that Renton breached its implied duty to cooperate with Scoccolo and facilitate the completion of the project. As pleaded, these theories are based upon the acts, or failures to act, of the City. We do not *889 interpret the challenged contractual provision to bar these claims even if the provision is valid. The fact that the delays were contributed to by the utility companies does not shield Renton from potential liability based on its own contractual breaches.
The parties argue at length concerning the proper construction of RCW 4.24.360. We need not address most of these arguments, beyond noting that the statute by its plain language voids a particular type of construction contract clause which purports to prevent delay damage claims against contractees or persons acting on their behalf. The statute does not purport to create a new cause of action against contractees, or to subject them to liability for the conduct of others as to whom they have no cognizable legal responsibility.
As a matter of logic, we note that even if the statute invalidates the subject language in the contract, Scoccolo cannot necessarily recover for delays related to the conduct of the utilities. In cases such as this, it may be that the parties to an agreement intended that the contractor bear the risk of losses due to delays, and the contractor's bid reflects the assumption of that risk. It may be that a contractee was without fault in causing a delay. It may be that a contractor should seek redress from a third party rather than a contractee. Or it may be that delays so far exceed what was contemplated by parties to a contract that additional recovery is warranted either under the contract or in quantum meruit. Finally, it may be that a contractee breached or actively interfered with a contractor's performance of an agreement. Case law discusses all of the above circumstances.[12] But these issues are not ripe for our review. Summary judgment was inappropriate because it was based solely upon the existence of the "no damages for delay" clause in the agreement. We reverse the trial court's summary judgment order.
We also note that Renton did not move for partial summary judgment on the basis of what any particular utility company may or may not have done. Nonetheless, Renton asks this court to affirm the trial court's summary judgment order with respect to all utilities except for Puget. Because Renton requested general relief from any claims for damages related to the actions of utility companies, we think it would be inappropriate to parse the trial court's broad summary judgment order with such specificity.

III
Due to our reversal of the trial court's summary judgment order, we need not resolve Renton's cross appeal at this time. However, we deem it appropriate to restate the law related to requests for attorney fees for the guidance of the parties and the trial court on remand.
As a starting point, the party seeking fees bears the burden of proving the reasonableness of the fees.[13] Attorney fees are awarded using the lodestar method, which calculates the amount of the award by multiplying a reasonable hourly rate by the number of hours reasonably expended on the matter.[14] The Mahler court said:
Under the lodestar methodology, a court must first determine that counsel expended a reasonable number of hours in securing a successful recovery for the client. Necessarily, this decision requires the court to exclude from the requested hours any wasteful or duplicative hours and any hours pertaining to unsuccessful theories or claims. Counsel must provide contemporaneous records documenting the hours worked.
. . .
The court must also determine the reasonableness of the hourly rate of counsel at *890 the time the lawyer actually billed the client for the services.
. . .
Courts must take an active role in assessing the reasonableness of fee awards, rather than treating cost decisions as a litigation afterthought. Courts should not simply accept unquestioningly fee affidavits from counsel.
. . .
Washington courts have repeatedly held that the absence of an adequate record upon which to review a fee award will result in a remand of the award to the trial court to develop such a record. Not only do we reaffirm the rule regarding an adequate record on review to support a fee award, we hold findings of fact and conclusions of law are required to establish such a record.[[15]]
Renton's objection to the award here is based upon the trial court's decision to limit fees to those incurred on its motion for summary judgment. Although a decision to limit fees to those incurred solely on that motion does not comport with the requirements of Mahler, Renton does not address the trial court's concern that Renton failed to meet its burden of proof because it did not submit evidence which demonstrated the reasonableness of the fees. Carefully following the requirements of Mahler upon remand should address the issues raised here in the event that a similar situation presents itself again.

IV
The trial court erred insofar as it dismissed causes of action based on: (1) Renton's alleged failure to exercise its contractual rights to direct Puget to complete the work or to have others complete the work if Puget failed to perform; and (2) Renton's alleged breach of its implied duty to cooperate with Scoccolo and facilitate the completion of the project. The existence of a contractual clause precluding additional compensation due to delays caused by the actions of utility companies does not preclude a contractor from recovering damages from a contractee that are caused by the contractee  whether or not those damages are somehow related to a utility's actions or lack thereof. We need not, and do not, determine whether RCW 4.24.360 invalidates the contractual language here. Because of the reasons stated above, we reverse the summary judgment order and consequently vacate the attorney fees award.
REVERSED.
BECKER and APPELWICK, JJ., concur.
NOTES
[1] RCW 4.24.370 states:

"Construction contract" for purposes of RCW 4.24.360 means any contract or agreement for the construction, alteration, repair, addition to, subtraction from, improvement to, or maintenance of, any building, highway, road, railroad, excavation, or other structure, project, development, or improvement attached to real estate, including moving and demolition in connection therewith.
[2] Dravo Corp. v. Municipality of Metro. Seattle, 79 Wash.2d 214, 218, 484 P.2d 399 (1971) (quoting with approval U.S. v. Spearin, 248 U.S. 132, 136, 54 Ct.Cl. 187, 39 S.Ct. 59, 63 L.Ed. 166 (1918) ("[w]here one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered.")).
[3] 90 Wash.2d 843, 586 P.2d 469 (1978).
[4] 90 Wash.2d 872, 586 P.2d 840 (1978).
[5] See Nelse Mortensen & Co., Inc. v. Group Health Cooperative of Puget Sound, 17 Wash.App. 703, 704, 566 P.2d 560 (1977).
[6] Mortensen, 17 Wash.App. at 704, 566 P.2d 560.
[7] Mortensen, 90 Wash.2d at 845, 586 P.2d 469.
[8] Mortensen, 17 Wash.App. at 727, 566 P.2d 560 (emphasis ours).
[9] Christiansen, 90 Wash.2d at 876, 586 P.2d 840.
[10] Christiansen, 90 Wash.2d at 877, 586 P.2d 840 (citing Seattle v. Dyad Constr., Inc., 17 Wash. App. 501, 565 P.2d 423 (1977)).
[11] Christiansen, 90 Wash.2d at 877, 586 P.2d 840.
[12] See, e.g., Peter Kiewit Sons' Co. v. Iowa S. Util., 355 F.Supp. 376 (S.D.Iowa 1973); V.C. Edwards Contracting Co., Inc. v. Port of Tacoma, 83 Wash.2d 7, 514 P.2d 1381 (1973); U.S. for Use of Wallace v. Flintco Inc., 143 F.3d 955 (5th Cir. 1998); Mississippi Transp. Comm'n v. SCI, Inc., 717 So.2d 332 (Miss. 1998); see also G. Richard Shell, Opportunity and Trust in the Negotiation of Commercial Contracts: Toward a New Cause of Action, 44 Vand. L.Rev. 221, 272-74 (1991).
[13] Mahler v. Szucs, 135 Wash.2d 398, 433, 957 P.2d 632, 966 P.2d 305 (1998).
[14] Scott Fetzer Co. v. Weeks, 122 Wash.2d 141, 149-50, 859 P.2d 1210 (1993).
[15] Mahler, 135 Wash.2d at 434-35, 957 P.2d 632 (internal citations omitted).